**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**DEBORAH L. G.,[1]**                                   **6:19-cv-00308-BR**

        **Plaintiff,**                          **OPINION AND ORDER**

**v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**


**KATHERING L. EITENMILLER**
**BRENT WELLS**
Harder, Wells, Baron & Manning, P.C.
474 Willamette St.
Eugene, OR  97401
(541) 686-1969

        Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

——————————————

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**STEPHEN DMETRUK**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3725

       Attorneys for Defendant

**BROWN, Senior Judge.**

     Plaintiff Deborah L. G. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.

## ADMINISTRATIVE HISTORY

     On March 6, 2015, Plaintiff protectively filed her

2 - OPINION AND ORDER

application for SSI benefits.  Tr. 23, 170.[2]  Plaintiff alleges a
disability onset date of March 6, 2015.  Tr. 23, 170.
Plaintiff's application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on September 12, 2017.  Tr. 23, 41-75.  Plaintiff and a
vocational expert (VE) testified at the hearing.  Plaintiff was
represented by an attorney at the hearing.

On March 7, 2018, the ALJ issued an opinion in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 23-36.  Plaintiff requested review by the
Appeals Council.  On December 26, 2018, the Appeals Council
denied Plaintiff's request to review the ALJ's decision, and the
ALJ's decision became the final decision of the Commissioner.
Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On March 1, 2019, Plaintiff filed a Complaint in this Court
seeking review of the Commissioner's decision.


**BACKGROUND**

Plaintiff was born on January 24, 1967.  Tr. 34, 170.

---

[2] Citations to the official Transcript of Record (#7) filed
by the Commissioner on September 27, 2019, are referred to as
"Tr."

Plaintiff was 48 years old on her alleged disability onset date. Tr. 34.  Plaintiff has at least a high-school education. Tr. 35.  Plaintiff does not have any past relevant work experience.  Tr. 34.

Plaintiff alleges disability due to Hepatitis C, diabetes, depression, post-traumatic stress disorder (PTSD), hypothyroidism, failing eyesight, fatigue, social anxiety, agoraphobia, obsessive-compulsive disorder, and swollen legs. Tr. 77-78.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 31-34.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42

4 - OPINION AND ORDER

U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th

Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA).  20 C.F.R. § 416.920(a)(4)(i).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

7 - OPINION AND ORDER

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since March 6, 2015, Plaintiff's alleged disability onset date.  Tr. 26.

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical spine, PTSD, persistent depressive disorder, and obesity.  Tr. 26.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of

the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1.  Tr. 27.  The ALJ found Plaintiff has the RFC to
perform light work with the following limitations:  can lift,
carry, push, and pull twenty pounds occasionally and ten pounds
frequently; can stand, sit, and walk for six hours each or in
total in an eight-hour day; can occasionally reach overhead to
the left and to the right; can understand, remember, and carry
out simple, routine tasks; can occasionally respond
appropriately to supervisors, to coworkers, and to the general
public; is limited to making simple work-related decisions; and
must be accommodated by normal breaks from tasks.  Tr. 29.

At Step Four the ALJ concluded Plaintiff does not have any
past relevant work.  Tr. 34.

At Step Five the ALJ found Plaintiff can perform other jobs
that exist in the national economy such as production assembler,
routing clerk, and office helper.  Tr. 35.  Accordingly, the ALJ
found Plaintiff is not disabled.  Tr. 36.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) rejected the
opinions of Joshua Boyd, Psy.D., and Irmgard Friedburg, Ph.D.,
state-agency examining physicians; (2) failed to provide germane

reasons for rejecting the opinions of Kathryn Kernan, FNP,
Plaintiff's treating nurse practitioner; (3) failed to provide
clear and convincing reasons for discounting Plaintiff's
subjective symptom testimony; and (4) failed to provide legally
sufficient reasons for discounting the lay-witness statements of
Judith H., Plaintiff's mother.

## I.    The ALJ's consideration of the opinions of Drs. Boyd and Friedburg and FNP Kernan.

Plaintiff contends the ALJ erred when he (1) failed to
provide legally sufficient reasons for discounting the opinions
of Drs. Boyd and Friedburg, state-agency reviewing physicians,
regarding Plaintiff's ability to interact with the public,
coworkers, and peers  and (2) failed to provide germane reasons
for discounting the opinion of FNP Kernan regarding Plaintiff's
limitations.

### A.    Standards

"In disability benefits cases . . . physicians may
render medical, clinical opinions, or they may render opinions
on the ultimate issue of disability - the claimant's ability to
perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.
2014).  "In conjunction with the relevant regulations, [courts]
have . . . developed standards that guide [the] analysis of an
ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc.*

*Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 416.913. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. §§ 416.913(a). Medical sources classified as "other sources" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. 20 C.F.R. §§ 416.913(d).

With respect to "other sources," the Social Security Administration Regulations provide:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source has known the claimant, the number of times and frequency that the source has

11 - OPINION AND ORDER

seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise.  SSR 06-03p, at *4.  On the basis of the particular facts and the above factors, the ALJ may assign a "not acceptable medical source" (*i.e.*, an other medical source) either greater or lesser weight than that of an acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ, however, must explain the weight assigned to such sources so that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.  "The ALJ may discount testimony from . . . 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'"  *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

    **B.   Analysis**

        **1.   The ALJ did not err when he discounted the opinions of Drs. Boyd and Friedburg.**

    In July 2015 Dr. Boyd reviewed Plaintiff's medical records in connection with Plaintiff's disability application. Dr. Boyd concluded Plaintiff was "not significantly limited" in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, but he

noted Plaintiff "should not frequently work in coordination or proximity to others . . . [and] cannot closely engage the public but can get along on a casual routine social basis and maintain adequate grooming."  Tr. 86.

In November 2015 Dr. Friedburg reviewed Plaintiff's medical records and agreed with Dr. Boyd's opinion.  Tr. 101.

The ALJ only gave the opinions of Drs. Boyd and Friedburg "partial weight."  Tr. 33.  The ALJ noted their opinions were "consistent with the records" that they had available to review at the time, but "later objective medical evidence does not support [their] opinions."  Tr. 33.

Plaintiff, nevertheless, contends the ALJ did not point to anything in the record to support his discounting of the opinions of Drs. Boyd and Friedburg.  The ALJ, however, noted in July 2016 that Emma Moon, MSW, performed a mental-health examination of Plaintiff and found her mental-health status was "within normal limits."  Tr. 32, 413.  On August 10, 2016, MSW Moon also noted Plaintiff was physically ill and had experienced severe symptoms of depression and anxiety over the previous two weeks, but Plaintiff hoped feeling better would lead to a decrease in her symptoms and she did "not have a lot that she can think of to talk about."  MSW Moon also noted

13 - OPINION AND ORDER

Plaintiff's mental status was "good."  Tr. 427-28.  On August
25, 2016, MSW Moon noted even though Plaintiff reported some
difficulty in managing feelings concerning family members,
Plaintiff was "adequately groomed, cooperative, open, engaged,
and pleasant, with normal speech, attention, and cognition."
Tr. 32, 430-31.

        As noted, the ALJ may assign an other medical source
either greater or lesser weight than that of an acceptable
medical source.  SSR 06-03p, at *5-6.  When determining the
weight to give MSW Moon's opinion, the ALJ specifically pointed
out that MSW Moon had examined Plaintiff several times while
Drs. Boyd and Friedburg merely reviewed Plaintiff's medical
records.  *See* SSR 06-03p, at *4.  Thus, the ALJ did not err when
he discounted the opinions of Drs. Boyd and Friedburg and relied
on the opinion of MSW Moon, Plaintiff's subsequent treating
provider.

        On this record the Court concludes the ALJ properly
discounted the opinions of Drs. Boyd and Freidburg and provided
legally sufficient reasons supported by substantial evidence in
the record for doing so.

**2.  The ALJ erred when he failed to provide germane reasons for discounting the opinion of FNP Kernan.**

In September 2015 Plaintiff began treatment under FNP Kernan.  Tr. 256.  The medical record reflects Plaintiff had neuropathy and gastroparesis as a result of her uncontrolled diabetes mellitus.  Tr. 227.  Plaintiff also reported hyperglycemia, nausea, paresthesia of the feet, polyuria, visual disturbances, vomiting, and weight loss.  Tr. 408.  In addition, the record reflects Plaintiff was treated in the emergency department and/or hospitalized for intractable nausea and vomiting and diagnosed with gastroparesis and diabetic ketoacidosis.  Tr. 339, 349, 366, 376, 459.

In August 2017 FNP Kernan evaluated Plaintiff and diagnosed her with uncontrolled Type 2 diabetes, gastroparesis, polyneuropathy, and chronic major depression.  Tr. 456.  FNP Kernan opined Plaintiff would need to lie down or to rest periodically due to neuropathy in her lower extremities and increased weakness and that Plaintiff would miss more than four days of work per month.  Tr. 457-58.

As noted, opinions from other medical sources, although not entitled to the same deference as acceptable medical sources, are important and should be evaluated together

with other relevant evidence to determine a claimant's
disability.  SSR 06-03p, at *3.  The ALJ, however, gave FNP
Kernan's opinion "little weight" on the grounds that she was
"not an acceptable medical source" (*i.e.*, an "other" medical
source) and that her opinion was inconsistent with the objective
medical evidence.  Tr. 34.  To support his conclusion the ALJ
noted the medical record reflects Plaintiff had full strength
and full range of motion "as well as wholly normal mental
status."  Tr. 34.  Although the ALJ found FNP Kernan's opinion
was inconsistent with the medical evidence, the ALJ failed
to explain how normal musculoskeletal evidence contradicts
FNP Kernan's opinion regarding the severity and limiting effects
of Plaintiff's diabetes mellitus, neuropathy, polyneuropathy,
and gastroparesis.

        The ALJ also gave FNP Kernan's opinion "little weight"
because FNP Kernan failed to consider that Plaintiff
"consistently did not manage her diabetes mellitus within
treatment guidelines."  Although the record reflects a few
instances when Plaintiff was unable to afford diabetes test
strips, which impacted the amount of insulin she took (Tr. 300,
449, 454), the Ninth Circuit has held disability benefits may
not be denied because a claimant failed to obtain treatment due

to lack of funds.  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

In summary, the ALJ did not provide germane reasons for discounting FNP Kernan's opinion.  On this record, therefore, the Court concludes the ALJ erred when he failed to provide germane reasons supported by evidence in the record for discounting FNP Kernan's opinion.

## II.  The ALJ erred when he discounted Plaintiff's symptom testimony and failed to provide legally sufficient reasons for doing so.

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

### A.  Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged;
[he] need only show that it could reasonably have caused some
degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."  *Id*.

        If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of [his] symptoms only by offering specific, clear
and convincing reasons for doing so."  *Garrison*, 759 F.3d at
1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of
malingering based on affirmative evidence thereof, he or she may
only find an applicant not credible by making specific findings
as to credibility and stating clear and convincing reasons for
each.").  General assertions that the claimant's testimony is
not credible are insufficient.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007).  The ALJ must identify "what testimony is
not credible and what evidence undermines the claimant's
complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834
(9th Cir. 1995)).

**B.    Analysis**

Plaintiff testified she is insulin dependent, does not drive, has poor vision, and cannot afford glasses.  Tr. 48, 51. Plaintiff stated she is compliant with diabetic dietary restrictions and does much of her food preparation herself. Tr. 52-53.  Plaintiff testified she stays home "most of the time," is sick in bed three days a week due to her gastro-paresis, and has an emotional-support dog that she walks every morning to the dog park near her apartment.  Tr. 57, 59. Plaintiff stated she does her own shopping, but she does not do laundry and has a hard time lifting five pounds.  Tr. 60. Plaintiff also testified she was not receiving mental-health counseling because she did not have health insurance.  Tr. 61. Plaintiff testified she could not work full-time because she cannot keep appointments, would miss too much work, and would require many breaks because of her need to use the bathroom frequently.  Tr. 62-63.

The ALJ noted the Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but he concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms is inconsistent with the medical evidence and with Plaintiff's

activities.  Tr. 31-33.  The ALJ noted Plaintiff "consistently
demonstrated full strength, normal ranges of motions, as well as
wholly normal mental status."  Tr. 34.  The ALJ also rejected
Plaintiff's testimony on the ground that "the record lacks
corroborative clinical objective evidence consistent with the
degree of limitation alleged."  Tr. 34.

Plaintiff is not required to show her impairments
"could reasonably be expected to cause the severity of the
symptoms she has alleged; she need only show that it could
reasonably have caused some degree of the symptoms."  *Smolen v.
Chater*, 80 F3.d 1273, 1282 (9th Cir. 1986).  Accordingly, "the
ALJ may not reject subjective symptom testimony . . . simply
because there is no showing that the impairment can reasonably
produce the degree of symptom alleged."  *Id.*

Here, as noted, the medical records reflect Plaintiff
had neuropathy and gastroparesis as a result of her uncontrolled
diabetes mellitus.  Tr. 227.  Plaintiff also reported hyper-
glycemia, nausea, paresthesia of the feet, polyuria, visual
disturbances, vomiting, and weight loss.  Tr. 408.  The records
also reflect Plaintiff was treated in the emergency room and/or
hospitalized several times for intractable nausea and vomiting,
and she was diagnosed with gastroparesis and diabetic keto-

acidosis.  Tr. 339, 349, 366, 376, 459.  Although examinations
showed Plaintiff had full strength or full range of motion, the
ALJ did not explain how normal musculoskeletal findings limited
the effects of Plaintiff's diabetes mellitus, polyneuropathy,
gastroparesis, and associated limitations.

        The ALJ also noted Plaintiff reported enjoying
cooking, baking, and spending time with family.  Tr. 32, 411.
She reported "walking to the Dari Mart with her partner every
other day and stretching on days in between."  Tr. 32, 427.  In
addition, the Plaintiff noted she was "thinking of finding work
as a housekeeper in order to earn some additional money," and
she "went tailgaiting" on one occasion during the period of her
claim.  Tr. 32, 325, 436.  The ALJ, however, failed to explain
how these activities exceeded or conflicted with Plaintiff's
testimony regarding her limitations.  Thus, the Court concludes
these activities do not constitute "substantial evidence"
inconsistent with Plaintiff's reported limitations.  *See Trevizo*
*v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

        On this record the Court concludes the ALJ erred when
he discounted Plaintiff's symptom testimony and failed to
provide clear and convincing reasons supported by substantial
evidence in the record for doing so.


21 - OPINION AND ORDER

### III. The ALJ erred when he failed to provide germane reasons for discounting the lay-witness statements of Judith H., Plaintiff's mother.

Plaintiff contends the ALJ erred when he failed to provide legally sufficient reasons for rejecting the lay-witness statements of Judith H., Plaintiff's mother, regarding Plaintiff's symptoms.

#### A.    Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

#### B.    Analysis

On May 4, 2015, Plaintiff's mother, Judith H., stated

in her Third-Party Function Report that Plaintiff was depressed
and almost agoraphobic.  Tr. 192.  She noted Plaintiff had a
very negative attitude, thought people were staring and laughing
at her, experienced obsessive-compulsive disorder, and had
difficulty sleeping.  Tr. 192-93.  Plaintiff did not drive, was
not able to go out alone, and did not usually spend time with
others.  Tr. 196.  She stated Plaintiff's conditions affected
her ability to lift, to squat, to bend, to stand, to reach, to
walk, to sit, to kneel, to talk, to hear, to climb stairs, to
see, to remember things, to complete task, to concentrate, to
understand, and to get along with others.  Tr. 197.  She also
stated Plaintiff did not handle stress or changes in her routine
well.  Tr. 198.

        The ALJ gave "little weight" to this evidence on the
grounds that it was inconsistent with the objective medical
evidence, was inconsistent with Plaintiff's reported activities
of daily living, and was not supported by an acceptable medical
source.  Tr. 34.

        An inconsistency with medical evidence is a germane
reason for discrediting the testimony of lay witnesses.
*Bayliss,* 427 F.3d at 1219.  The mere lack of support from
medical records, however, is not a germane reason to discount

lay-witness testimony.  *Diedrich v. Berryhill*, 874 F.3d 634, 640
(9th Cir. 2017).  Although the ALJ stated Judith H.'s statements
were "inconsistent" with the medical evidence that Plaintiff had
full strength and normal range of motion and that her mental
status was "wholly normal," the ALJ did not explain how the
medical evidence contradicted Judith H.'s statements.  As noted,
the mere lack of support from medical records is not a germane
reason to discount lay-witness testimony.  Tr. 34.

The ALJ also erred when he discounted Judith H.'s
statements on the ground that she is not "an acceptable medical
source."  Tr. 34.  As noted, lay-witness testimony regarding a
claimant's symptoms is competent evidence that the ALJ must
consider unless he "expressly determines to disregard such
testimony and gives reasons germane to each witness for doing
so."  *Lewis,* 236 F.3d at 511.

On this record the Court concludes the ALJ erred when
he rejected the lay-witness statements of Judith H. and failed
to provide specific, germane reasons for doing so.

## REMAND

The Court must determine whether to remand this matter for
further proceedings or to remand for the calculation and payment

of benefits.

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *Carmickle*, 533 F.3d at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

As noted, the Court concludes the ALJ erred when he failed to provide legally sufficient reasons supported by substantial

evidence in the record for discounting the opinion of FNP Kernan regarding Plaintiff's limitations.  The ALJ also erred when he failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony and the lay-witness statements of Plaintiff's mother regarding Plaintiff's symptoms and limitations.  Thus, the Court concludes consideration of the record as a whole establishes that the ALJ would be required to find Plaintiff disabled and to award benefits if this evidence was credited.

Accordingly, the Court remands this matter for the immediate calculation and payment of benefits.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 22nd day of May, 2020.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge


26 - OPINION AND ORDER